Good morning, Mr. Rankin. Good morning, Madam Chief Judge and members of the panel. I propose to address the first issue in our brief this morning, whether it was proper for the judge to have given a willful blindness instruction. This court has, of course, urged caution in giving that instruction, recognizing that there's a danger that if the jury is given that option, that a jury may convict the defendant on a feeling or a theory of negligence, rather than proof of knowledge. Here, we suggest that it was not proper to give this instruction, in light of the brief period of time that the defendant was observed, and the lack of red flags that have characterized many of the cases that this court has previously highlighted. First of all, I want to emphasize that in order to warrant this instruction, the defendant has to raise or claim a lack of knowledge. Here, it was the government that introduced the defendant's statements when confronted by the police, as a way, in a sense, of bootstrapping their way into an alternate theory of proving knowledge. So in the government's opening statement, they described the statements that the defendant made as he was confronted by the police. It wasn't the defendant who first introduced this issue, it was the government. And the government elicited this from their second witness on direct examination, eliciting statements that if it had been the defendant's proposed admission of those statements, would not have come in because the government would have likely contended that they were false or self-serving exculpatory statements and hence not admissible on that theory. So we contend that it was the government that insinuated this issue in there. Certainly, the statements were admissible at the government's request, either as consciousness of guilt, or in this case, they're trying to bootstrap their way into this alternate theory of proving knowledge, and we suggest that that's not proper. The chief red flag that the government has highlighted is the testimony of a detective who says, I approached the defendant from behind, I was standing near the suitcase, and I detected a strong odor of marijuana. Other officers that were surrounding the defendant did not detect that odor at the scene, and there was a contrast between the testimony of the case agent, Detective Allen, who was doing the interaction and questioning of the defendant at the scene. He says he nodded to the officer who claimed to have detected the smell, indicating that the officer should go ahead and unzip the suitcase. The officer who unzipped the suitcase said, no, I didn't see any nod by Detective Allen, rather, I just smelled the marijuana, I opened it, and told Detective Allen that it was there. Well, hadn't the defendant at that point indicated that it wasn't his suitcase, he had found it, so therefore he wasn't claiming possession, so regardless of what animated the officer to open it, isn't that sort of a non-issue? Well, if we were claiming that the stop was, I mean, we have an argument in the case, in the brief, that the stop was improper, but I don't think that bears on this issue. Well, yes, but on this issue, even if you assume that the willful blindness instruction was an error, if you take all the other evidence, isn't it a harmless error? Well, I suggest it's not. I mean, you've got a relatively brief encounter, the officers had him in view for 10 or 15 minutes, a suitcase is different from some of the exotic packages that have been imported from abroad, where it's claimed to be cloth. But wait a minute, they had an informant who was reliable, who told them that this was a stash house in this area, and that they were going to move it. This fellow shows up, they watch him, he goes into an alleyway, he comes out with a suitcase. Well, that's certainly relevant to the motion to suppress, Your Honor. I agree. It's all part of this, isn't it? No, it's not part of the willful blindness issue because there was no evidence about the informant at trial, whether he was reliable, any of that. Just on the willful blindness, I understand your argument. I take it the defendant's position is that he did not know it was in the suitcase. That's what the evidence is, and that's what the statements to the officers were. I think Justice Stahl – So I guess I'm trying to understand your argument that somehow the trigger that the defendant has to say he didn't know what was in the suitcase wasn't met here. You seem to be suggesting that he's taking the position that he does know what's in the suitcase? No. There are two ways to put on a lack of knowledge defense, I think, in a case like this. In one sense, you can say if the statement didn't come in, the defense lawyer could argue to the jury, where's the proof that he knew what was here? He's just walking down the street with a suitcase. He does back up and makes gestures, but you're basically arguing a reasonable doubt as to whether they've proven that element of the offense. Here, with the willful blindness and that statement being admitted, the defendant has, to the extent that it's a benefit, the benefit of his self-serving exculpatory statement, I didn't know what was in it. But that was put in by the government, not by the defendant. I understand that. I'm just saying, in thinking about a willful blindness and the predicate for it, this seems like a case in which the defendant must be contending he doesn't know what's in the suitcase. Or he's got a bigger problem than the willful blindness instruction, doesn't he? Well, I mean, his defense is undoubtedly influenced by what the government introduces. Once the government introduces the suitcase, well, but on the issue of knowledge, are they going to prove up his statement and argue that that is a false exculpatory statement or consciousness of guilt? In which case, you know, if the defendant had put that in, I can see permitting the government to do it. I think... Your basic argument seems to be the position the defendant took was he didn't know what was in the suitcase and the government couldn't prove that he did know. The defendant wants it up or down on his actual knowledge. You're saying that because a willful blindness instruction was used, something less than actual knowledge could permit the jury to find he was guilty here. But the government responds, well, there was the odor in the suitcase. He must have smelled it as well. Therefore, he was at least willfully blind. I follow that argument. What I don't follow is why it matters that the government introduced his statement as opposed to him offering this statement. Well, I guess I would try to analyze it slightly differently. The government must... The defendant must claim a lack of knowledge in order for the willful blindness to be a theory that the judge can give the jury. Okay? And imagine this trial without the statement. Okay? The defense lawyer is cross-examining about what they observed and then stands up in closing argument and says, the government hasn't proved what he knew. Would the government get that instruction? I suggest not because the government would not have shown that statements he made were demonstrably false and just, you know, those were the red flags the government pointed to. In the absence of the statement, there were no red flags. That's to the second part, which is not whether he's claiming a lack of knowledge, but to whether there's warning signs. And as to the warning signs, so you could say, well, the statement is in the warning sign. But what about the fact that there's evidence of him leaving his stash house with a suitcase that he's rolling down the street and then the odor? Why aren't those warning signs sufficient for giving the instruction? Well, the stash house, I don't think, was admitted into evidence. Going up a driveway, coming out with a wheeled suitcase is not so unusual as to set off red flags. I think that's the... What about all the other things he did when he rolled it down? Went over to the Jeep, tried to stuff it under the Jeep, got it on a telephone, back and forth. Given everything that they knew about the area, isn't that enough to raise suspicion? Wouldn't a reasonable police officer decide that at least he wanted to investigate? Well, again, certainly they had a basis to stop the defendant if, you know, if we're talking about this motion to suppress. But I think that the, I mean, the conduct was pretty benign. This is not talking in coded language, not saying, oh, I don't want to hear that. This is walking down the street with a suitcase, using a cell phone, walking 10 feet away from the cell phone. And those are not the kind of factors that the case law points to as justifying this instruction. Thank you. Thank you very much. Mr. Lockhart. Good morning. Donald Lockhart for the government. So as a threshold matter, we understood the defense claim in the district court and in the opening brief and in the reply brief to be a prong two claim. Now it appears we have a prong one claim, which I've never heard before. But in any event, the claim is meritless if there is some suggestion that the defendant has to actually testify at trial in order for prong one to be satisfied. Prong one just says the defendant has to claim a lack of knowledge. Now not only did he claim that in his statements to the police, but that was his whole defense at trial. It was his defense in the opening statement. It was his defense in the closing arguments. So it was clear that prong one was satisfied. On to prong two, it seems to us that if you look carefully at the defense opening brief and the defense reply brief, there's a subtle theme that cuts through both and to some extent the argument, and that is that somehow there's a brick wall separating the evidence you can consider as to whether the defendant had actual knowledge that the suitcase contained drugs and the evidence that you can consider on whether he was aware of a high probability that the suitcase contained drugs. And we would say that the same evidence applies to both things. And so that when you're asking the question, well, was there enough evidence under prong two as to the high probability aspect of that prong, you've got to look at the whole case and keep in mind that this is a guy who the officers see cut straight down two streets in Providence, make a beeline right behind the house in question, 40 Lee Street. He comes out three minutes later. He's wheeling a suitcase with about $100,000 in drugs, three digital scales, a loaded .357 Magnum. That evidence in the suitcase, which the defense seems to be saying that you're not allowed to consider as part of the analysis, tells you that this is a big drug operation and that he's involved in transporting the drugs. Now, how likely is it that somebody left? I'm sorry, that sounds like an argument that because of what was in the suitcase he must have known. No, the argument is this, that if you look at the contents of the suitcase, it tells you that there was a big drug operation in progress. And if you look at what he did, his own conduct, going behind that house and coming out with a suitcase, then going up the street, looking both ways as he's going up, then hiding it behind the Jeep, then hiding it under the Jeep, dropping it like a hot potato. Okay, so he knows he's got something very valuable in the suitcase, for which he gets paid maybe a hundred bucks to go perform this transportation service as they shut down one drug house and presumably open another. Well, that's if you're viewing the evidence in the light most favorable to the defense. But if you're viewing it in the light most favorable to us. Yes, but this is a question of whether the instruction should have been given. Well, right, but you're looking at the evidence the same way in that evaluation, in the sense that you're saying was there sufficient evidence of willful blindness to give the instruction. And it's the same sort of inquiry that you would undertake if you were evaluating the sufficiency of the evidence, with the exception that you're giving more deference to the district court judge at the time, because the judge is looking not just at the evidence as it's coming in, but also what are the parties emphasizing. If we weren't inclined to think that we should consider what was in the suitcase as a warning sign for purposes of giving the instruction, what would you say the warning signs were? Well, the warning sign is all the evidence. Well, I guess I want you to, part of all the evidence is what was in the suitcase. And you were saying before that was a big warning sign, potentially. So if I said I wasn't inclined to think that was a warning sign, what would you say the warning signs were? Well, the warning sign is, you know, the suitcase is reeking of marijuana. Now, in answer to the defense proposition that, well, there is no evidence that he knew of the marijuana smell, the answer is, of course there's evidence that he knew the marijuana smell. He was involved in this big operation with $100,000 worth of drugs. The detective testifies that the uninitiated are not typically tasked with transporting drugs. And in this case, it's a massive shipment which, according to the detective's testimony, you wouldn't entrust with somebody who didn't know the contents. Yeah, but you can see what a dangerous road that is to go down. Then the truly innocent are caught up by the expert testimony of a police officer that this isn't what usually happens. But it's not that. And actually, I mean, you know, I can shift to the harmless error argument if you'd like. If you could stay on this just for another minute in terms of what the warning sign is. Okay, so the warning sign is we have a suitcase that's reeking of marijuana, and under the Heredia decision, the Ninth Circuit en banc decision, it points out that irregular smells, put aside whether it's marijuana, a defined marijuana smell, irregular smells create an inference for willful blindness. In Heredia, it was laundry detergent. Laundry detergent is a masking agent sometimes to conceal the smell of drugs. And in that case, my memory is that there was no evidence that the defendant in that case knew that detergent is a masking agent. Are you suggesting smell alone? No, not at all. I'm saying you look at smell with all the other factors. Okay, that's what we're trying to get from you. Not at all. We're not saying. You're saying context here. The context is what the detectives knew when they went there, what they thought they were looking for, and then what happened. You say that we have to look at the entire context of the transaction. Well, no, I'm not suggesting that you see the jury was not made aware of, you know, the background of why they were there for surveillance that day. That came out of a suppression hearing. So we're not saying that you include that fact in the analysis. What we're saying is that. That means the stash house is not relevant to this question. No, it is relevant, and it's relevant this way, and it's obviously a stash house for this reason, which is that there are only two possibilities. Either that suitcase with $100,000 in drugs was sitting in the grass behind there unattended, or somebody, one of his confederates, gave it to him from behind the house where you couldn't see it from the street. And so when the jury is looking at this question, they can say, look, we think that based on all this evidence, it is clear to us he had actual knowledge of the contents of the suitcase because he was a player in this operation. Wait a minute. But. I guess it's beginning to bother me now. Are you saying that there was no evidence that it was a stash house at all? No, there wasn't. That wasn't put in evidence? It depends on what you're talking about. We say there was evidence that it was a stash house because this is the area where he went to get $100,000 in. That's something that you figured out after the fact. No, but, Judge, otherwise you are left with a proposition that this was just sitting out there in the grass, $100,000 worth of drugs. I mean, the jury isn't required to turn on blinders to reality. This is your evidence that it was a stash house independent of the evidence that came in at the suppression hearing showing that this is actually where, you know, a thousand pounds of marijuana was being sold. Just before we get to the evidence from the suppression hearing, just at trial, apart from the smell coming out of the suitcase, all you're saying is he's got a suitcase and he's walking down the street? No. That's a warning sign? No, not at all. It's everything, Judge. You've got to look at the fact of how he gets there on what we think the jury could find was a preconceived mission to get that suitcase. This is not a guy who stumbled on it. This is a guy who walked down two Providence streets, cut right behind the building. The jury could find that there was a handoff in progress, that there were people waiting behind the building for him who gave him the suitcase, the people who are naturally part of this operation. Remember, the suitcase doesn't just have $100,000 in drugs. It has three digital scales. This is not a one-man operation. The jury could find that this guy was part of a larger business, and it would make no sense for him just to find this thing in the grass behind 40 Lee Street. Are you asking us to pile inference upon inference? No, it's not inference upon inference. It's an easy narrative, which has him being tasked with delivering these drugs, which he picks up from behind the house. And when he walks back up, he retraces his exact steps that he took. He's looking around to see if somebody's following him. The police approach him. And doesn't that still leave the defense that he's a transporter who gets paid for transporting?  What other evidence is there, other than from the contents of the suitcase, a number of inferences can be drawn? Certainly it's reasonable for the jury to think what you say. But what other evidence? Did the evidence of the lies about where he found it make its way to the jury? Yes, of course. In my narrative, I haven't even gotten to that point yet, because there have been some questions. So upon questioning, the first words out of his mouth are, when he drops the bag and says, not mine, not mine, he says, I was running at the Providence College track. Somebody tossed this thing over a fence. That's his first story. And I found it there. And this is about a 40-pound suitcase. Conservatively, we have 33 pounds of marijuana alone, three digital scales, a loaded .357 Magnum revolver. The second story, incidentally, is, by the way, when this suitcase came sailing over the fence, I had a friend there, the college white boy, so-called, who said, you know what, you should take the suitcase because it contains cash. Massive evidence of consciousness of guilt and his awareness of what that suitcase contained. So when you consider all that evidence together, this, from our standpoint, seems like the classic case for a willful blindness instruction, because the jury could find that when he went behind the house, even if he didn't open that suitcase himself, even if he didn't pack it himself, he was handed it by a Confederate, and he knew darn well that there were drugs in it because he was part of that operation. Thank you.